IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON LEE PAWLAK, | ) | CASE NO. 1:18-cv-01289 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| SEAN BOWERMAN, | ) | |
| Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

Petitioner Brandon Lee Pawlak ("Petitioner" or "Pawlak"), who is now represented by counsel,[1] filed a pro se habeas corpus petition pursuant to 28 U.S.C. § 2254.  His petition is deemed filed on May 30, 2018, the date he placed it in the prison mailing system.[2]  Doc. 1, p. 15.  Pawlak challenges the constitutionality of his convictions and sentences rendered in *State of Ohio v. Brandon L. Pawlak*, Case No. CR-14-591408-A (Cuyahoga County).  Pawlak's convictions arise "from an incident on October 23, 2014, that began at Sweetbriar Golf Club ("Sweetbriar") in Avon Lake, Ohio and, after a high-speed chase, ended at Dover Gardens Tavern in Westlake, Ohio."  Doc. 7-1, p. 98, ¶ 2.  Following a jury trial, Pawlak was found guilty of 30 out of 32 counts, including 13 counts of aggravated robbery and 13 counts of aggravated

---

[1] During the pendency of this case, a notice of appearance by counsel was filed on behalf of Pawlak.  Doc. 12.

[2] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts."  *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)).   Pawlak's petition was docketed in this Court on June 6, 2018.  Doc. 1.

vehicular assault, and the trial court sentenced Pawlak to a prison term of 35 years and 6 months. Doc. 7-1, pp. 100-101, ¶¶ 8-9.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For the reasons set forth below, the undersigned recommends that the Court DISMISS and/or DENY Pawlak's Petition.

## I.      Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual determinations are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009).  The Eighth District Ohio Court of Appeals summarized the facts underlying Pawlak's convictions as follows:

> {¶ 2} The instant matter arose from an incident on October 23, 2014, that began at Sweetbriar Golf Club ("Sweetbriar") in Avon Lake, Ohio and, after a high-speed chase, ended at Dover Gardens Tavern in Westlake, Ohio. Around 8:30 p.m., two employees, superintendent Daniel Hershey ("Hershey"), and his assistant John Sterna ("Sterna"), observed suspicious activity on the Sweetbriar grounds. Hershey observed two vehicles, a white van and a "dark-colored" pickup truck, behind the maintenance area. Hershey noticed an individual trying to gain entry into a dump truck in the maintenance area. Hershey alerted Sterna, who had a better vantage point, and asked him to look into the situation. Furthermore, Hershey contacted the Avon Lake Police Department to report the suspicious activity.

> {¶ 3} Sterna walked into his backyard to get a better view and observed two individuals in the maintenance area. One of the individuals was wearing a light gray hooded sweatshirt. Sterna approached the individuals and confronted a man, later identified as appellant, wearing a dark hooded sweatshirt. After Sterna confronted appellant, appellant jumped into Sweetbriar's white pickup truck and the truck sped away, nearly running over Sterna. Appellant's codefendant, Matthew Sowden ("Sowden"), fled the area in a white van. Appellant and Sowden left behind a blue pickup truck that had been stolen from Community Assessment and Treatment Services, Inc. ("CATS") in Cleveland, Ohio.

{¶ 4} The responding officers located the white van and Sweetbriar's white pickup truck, and attempted to initiate a traffic stop. Sowden, who was driving the van, complied with the officers and was taken into custody. Appellant, who was driving the pickup truck, attempted to evade the officers.

{¶ 5} Officers began pursuing appellant in Avon, Ohio, and continued their pursuit as appellant fled eastbound on Detroit Avenue. As appellant approached the intersection of Detroit Road and Dover Center Road in Westlake, Ohio, he lost control of the vehicle and crashed into Dover Gardens Tavern. Thirteen bar patrons were hospitalized as a result of the crash. Appellant attempted to climb out of the truck's rear window, but officers immediately took him into custody.

*State v. Pawlak*, 2016-Ohio-5926, ¶¶ 2-5, 206 WL 5371773, * 1 (Ohio App. Ct. Sept. 22, 2016);

Doc. 7-1, pp. 98-100.

## II.    Procedural Background

### A.  State conviction

On November 25, 2014, a Cuyahoga County Grand Jury indicated Pawlak on 32 counts,

which included 13 counts of aggravated robbery; 13 counts of aggravated vehicular assault; 1

count of failure to comply with an order or signal of a police officer; 1 count of felonious assault;

two counts of breaking and entering; and two counts of grand left.  Doc. 7-1, pp. 3-14, 100.  On

December 8, 2014, Pawlak, through counsel, pleaded not guilty to all counts in the indictment.

Doc. 7-1, p. 17.

Pawlak's jury trial started on July 20, 2015.  Doc. 7-1, p. 100.  The jury found Pawlak

guilty of 30 of the 32 counts.  Doc. 7-1, pp. 21-22, 100.  Pawlak was found not guilty of Count

28 (felonious assault) and Count 29 (one of the two counts of breaking and entering).  Doc. 7-1,

pp. 21-22, 100.  On August 3, 2015,[3] the trial court sentenced Pawlak to a prison term of 35

years and 6 months – 10 years on Counts 1-13, to be served concurrently to one another; 30

months on Counts 14-26, to be served consecutively to one another and concurrently with

---

[3] The sentencing journal entry was received for filing on August 4, 2015.  Doc. 7-1, pp. 22- 23.

Counts 1-13; 3 years on Count 27, to be served prior to and consecutively to all other counts; and 12 months on Counts 30-32, to be served concurrently with Counts 1-26, and consecutively to Count 27.  Doc. 7-1, pp. 22-23, 100-101.

### B.  Direct appeal

On August 27, 2015, Pawlak, through counsel, filed a notice of appeal with the Ohio Eighth District Court of Appeals.  Doc. 7-1, pp. 24-32 (CA 15-103444).  On the same date, Pawlak acting pro se filed a notice of appeal.  Doc. 7-1, pp. 33-41 (CA 15-103435).  On September 15, 2015, the court of appeals sua sponte dismissed appeal number 103435 as duplicative of appeal number 103444.  Doc. 7-1, p. 42.  In his appellate brief filed on March 16, 2016 (Doc. 7-1, pp. 43-64), Pawlak raised the following three assignments of error:

1.  The guilty verdict cannot be upheld because the conflicting evidence and testimony presented at trial did not establish the appellant's guilt beyond a reasonable doubt.

2.  The guilty verdict cannot be upheld beca[u]se trial counsel provided ineffective assistance of counsel thereby violating appellant's right to counsel.

3.  The trial court abused discretion and erred by sentencing the appellant to consecutive sentences.

Doc. 7-1, pp. 54-62.  On May 5, 2016, the State filed its appellate brief.  Doc. 7-1, pp. 65-95. On September 22, 2016, the Eighth District Court of Appeals affirmed the judgment of the Cuyahoga County Court of Common Pleas.  Doc. 7-1, pp. 96-124.

On November 4, 2016, Pawlak acting pro se filed a notice of appeal with the Supreme Court of Ohio.  Doc. 7-1, pp. 125-168.  Pawlak presented the following propositions of law:

1.  The State presented conflicting evidence at trial which could not meet the sufficiency and manifest weight standards to support a guilty verdict, thereby violating appellant's federal and state due process rights.

4

2.     Trial counsel failed to provide effective assistance pursuant to the two-pronged standard of <u>Strickland v. Washington</u>, thereby violating appellant's rights under the Sixth Amendment of the United States Constitution.

3.     The trial court abused its discretion and violated appellant's federal due process and equal protection rights under the Fifth and Fourteenth Amendments and his Eighth Amendments rights against cruel and unusual punishment when it sentenced appellant to consecutive terms.

Doc. 7-1, pp. 131-138.  On April 19, 2017, the Supreme Court of Ohio declined to accept jurisdiction of Young's appeal.  Doc. 7-1, p. 169.

**C.  Federal habeas corpus**

In his federal habeas petition, Pawlak asserts the following four grounds for relief:

**GROUND ONE**: The State of Ohio presented conflicting evidence at trial w[h]ich could not meet the sufficiency and manifest weight standards to support guilty verdicts.

**Supporting Facts**: State of Ohio withheld exculpatory evidence which could have exonerated appellant or at least determined with certainty if appellant was the actual driver of the vehicle.  One of the states witnesses testified that fingerprints, DNA, and blood samples from the driver side of the truck were collected and stored into evidence.  Evidence of this magnitude is relevant if it helps prove or disprove a fact that is important to the outcome of trial.  Especially when it is in the states custody and can be produced.

**GROUND TWO**: Trial counsel failed to provide effective assistance of counsel guaranteed by the 6th Amendment of the United States Constitution.

**Supporting Facts**: Trial counsel failed to file a suppression hearing to suppress unmirandized video taped interview, w[h]ich audio was un-clear in, and by doing so a detective took the stand and testified that "his" "interpretation" of said interview was a "confession" w[h]ich it was <u>NOT</u>.  Also trial counsel failed to argue, request, object to the exculpatory evidence, DNA, fingerprints, blood samples, NOT being turned over to the defense. This evidence would in fact exonerated Defendant/Petitioner Brandon Pawlak as the driver.

**GROUND THREE**:  The sentence of appellant was in error (35.5 years).  Trial court abused its discretion in sentencing.

**Supporting Facts**: Trial court violated appellants (federal) due process and equal protection rights under the Fifth & Fourteenth Amendments rights against cruel and unusual punishment when it sentenced appellant to consecutive terms for the

5

aggravated vehicular assault charges saying consecutive terms were "needed" to reflect the seriousness of the crimes all 13 aggravated vehicular assault charges arise from one accident, once course of conduct in a split second, with no individual intent.

**GROUND FOUR**:  Violated due process of exculpatory evidence, Brady material/DNA, fingerprints, blood samples.

**Supporting Facts**: As part of police investigations, a officer was told to collect, DNA samples, fingerprints, and a blood sample was collected by police and this evidence was stored into evidence to be tested to determine the identity of the driver but said evidence was never tested to match or not match against my own, Petitioner Pawlak.

Doc. 1, pp. 5, 7-8, 10.

## III.    Law and Analysis

### A.  Standard of review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

"A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by "clear and convincing evidence" and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (citing 28 U.S.C. § 2254(d) and § 2254(e)(1)). "The presumption of correctness also applies to factual findings made by a state appellate court based on the trial record." *Matthews*, 486 F.3d at 889 (citing *Sumner v. Mata,* 449 U.S. 539, 546-47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)).

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652,

664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388,

1398 (2011).

### B.  Exhaustion and procedural default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted

all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal

constitutional claims must fairly present those claims to the state courts before raising them in a

federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6

(1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*,

444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003))

("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not

'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a

habeas petitioner must present both the factual and legal underpinnings of his claims to the state

courts.[4]  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner

must present his claims to the state courts as federal constitutional issues and not merely as

issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir.

1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).   Further, a constitutional claim for

relief must be presented to the state's highest court in order to satisfy the fair presentation

---

[4] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal
nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing
constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of
constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged
facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.

First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id.*  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at

9

806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* at 753. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural

rule." *Id.*  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### C.  Pawlak's grounds for relief

#### 1.  Ground One should be DISMISSED and/or DENIED

In Ground One, Pawlak argues that there was insufficient evidence to convict him and his conviction was against the manifest weight of the evidence.  Doc. 1, p. 5; Doc. 17, pp. 7-12.

##### a.  Manifest weight of the evidence

"A 'manifest weight of evidence' claim, which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding[.]" *Brown v. Moore*, 2008 WL 4239160, *2, 8-9 (S.D. Ohio 2008) (footnote 2 omitted) (citing and relying on 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984)).  Accordingly, the undersigned recommends that the Court DISMISS Pawlak's manifest weight of the evidence claim in Ground One as not cognizable on federal habeas review.

##### b.  Sufficiency of the evidence

Unlike a manifest weight of the evidence claim, a sufficiency of the evidence claim is a claim cognizable on federal habeas review.  *See In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable

11

to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Under this standard, deference is due the jury's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The focus is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, in making a determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S.Ct. 2060, 182 L.Ed.2d 978 (2012) (reaffirming that sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference"). Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (citing 28 U.S.C. § 2254(d)(2)) (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

In rendering its decision, the state court of appeals addressed the sufficiency claim, stating:

{¶ 12} First, appellant argues that the evidence at trial did not establish his guilt beyond a reasonable doubt. Specifically, appellant contends that the state failed to prove, beyond a reasonable doubt, that he drove the truck that crashed into Dover Gardens Tavern.

¶ 13} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden,* 8th Dist. Cuyahoga No. 92266, 2009–Ohio–3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 14} In the instant matter, appellant does not allege that he was not in the truck that crashed into Dover Gardens Tavern. Rather, appellant suggests that he was a passenger and that another man was driving the truck. Appellant contends that none of the state's witnesses "affirmatively state[d] that they saw [him] driving the [truck]." We disagree.

{¶ 15} The state presented the testimony of the following eyewitnesses: (1) Sterna, (2) Officer Andrew Kehl, (3) Officer Nathan Fox, (4) Devin McElhannon, and (5) Katie Murphy.

{¶ 16} First, Sterna testified that he confronted appellant in Sweetbriar's maintenance area and that appellant ran behind Sweetbriar's truck. Sterna observed appellant get into the truck's driver's seat. Sterna testified that "[n]o more than 15 seconds" after appellant got into the driver's seat, the truck "pull[ed] a 180" and began to follow the van. Sterna acknowledged that he could not determine who was driving the truck because the truck was bearing down on him and the lights were shining in his eyes. However, Sterna clarified that moments before the truck drove off, he saw appellant in the driver's seat.

{¶ 17} Second, Avon Lake Police Officer Andrew Kehl testified that he first encountered the stolen truck on Jaycox Road, a driving distance of approximately 30 seconds from Sweetbriar. He testified that he observed one occupant in the truck's driver's seat, and did not see a second occupant in the truck at any time. Officer Kehl explained that he never lost visual contact with the truck, either during the chase or when the truck crashed into Dover Gardens Tavern. Officer Kehl testified that after the truck crashed into the bar, he exited his cruiser and observed "[a] subject coming out of the back window of the truck." Officer Kehl explained that the individual attempted to climb through the back window on the driver's side. "Less than ten seconds" thereafter, Officer Kehl apprehended the individual. Officer Kehl identified appellant as the individual who climbed out of the truck. Officer Kehl testified that neither the passenger's door nor the driver's door opened after the vehicle crashed into the bar. Based on his observations, Officer Kehl did not believe a second individual was in the truck with appellant.

13

{¶ 18} Third, Westlake police officer Nathan Fox testified that he witnessed the truck crash into Dover Gardens Tavern after driving over "stop sticks." Officer Fox testified that he never lost visual contact with the truck as it crashed into the bar. Officer Fox testified that he observed the suspect crawl through a window into the bed of the truck. Officer Fox explained that he and Officer Kehl pulled the suspect from the bed of the truck to the ground and handcuffed him. Officer Fox identified appellant as the suspect who he apprehended. Officer Fox testified that he was "certain" that there was only one occupant inside the truck when it crashed into the bar.

{¶ 19} Fourth, Devin McElhannon ("McElhannon"), testified that he was inside Dover Gardens Tavern when the truck crashed into the bar. McElhannon testified that he "saw the person that was driving the truck trying to get out of the vehicle" and that he "went after [the person]." McElhannon explained that the person was trying to get out of the "driver's portion" of the truck. McElhannon identified appellant as the person who was trying to get out of the vehicle that had crashed into the bar. By the time McElhannon got to appellant, he was on the ground and officers were handcuffing him. McElhannon testified that he did not see anybody jump out of the truck and run away.

{¶ 20} Fifth, Katie Murphy ("Murphy") testified that she was outside of Dover Gardens Tavern when the truck crashed into the bar. Murphy explained that she maintained a constant view of the truck as it traveled eastbound on Detroit Road and crashed into the bar. Murphy testified that "less than a minute [later]," she saw a man crawl out of the cab of the truck and into the bed. Murphy testified that officers immediately took this man into custody. Murphy explained that she only saw one person exit the truck after it crashed into the bar.

{¶ 21} In addition to the testimony of the eyewitnesses, the state presented the testimony of Reed Reikowski, a detective with the Avon Lake Police Department. Detective Reikowski testified about a jail phone call that appellant placed to codefendant Sowden three days after the incident. The phone call was played in its entirety to the jury. Detective Reikowski testified that during the phone call, Sowden said to appellant, " '[i]t's funny you were able to drive through Avon Lake and Avon without a ding or a dent then you hit Westlake,' and I think he said, '[b]oom.' " (Tr. 808.) Detective Reikowski clarified that Sowden said to appellant, "you were able to drive," rather than "they" or "we."

{¶ 22} After reviewing the record, we find that the state presented sufficient evidence, if believed, to demonstrate that appellant drove away from Sweetbriar in the stolen truck, evaded the police officers that were pursuing him, and crashed the truck into the Dover Gardens Tavern.

14

*Pawlak*, 2016-Ohio-5926, ¶¶ 12-22, 206 WL 5371773, * 2-4; Doc. 7-1, pp. 101-105.

The crux of Pawlak's sufficiency argument is that the evidence was insufficient to establish that he was driver of the vehicle.  He contends that "not one [witness] testified that they actually saw Petitioner at the wheel."  Doc. 17, p. 9.  And he asserts there was conflicting testimony that precluded a guilty verdict, pointing to testimony indicating he "roundly denied that he was the vehicle's driver, stating another person drove it."  Doc. 17, p. 11.

To the extent that Pawlak contends that there was not enough direct evidence to connect him to the crimes, "[c]ircumstantial evidence alone is sufficient to support a conviction[.]" *Johnson*, 200 F.3d at 992; *see also Durr*, 487 F.3d at 449 ("circumstantial evidence is entitled to equal weight as direct evidence").  Furthermore, Pawlak's argument amounts to a request that this federal habeas court reweigh the evidence or evaluate the credibility of the witnesses.  However, as discussed above, in making a determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [trier of fact]."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).  The jury heard the testimony of the witnesses and evaluated the credibility of the witnesses' testimony.  Having done so, the jury reached guilty verdicts.  Deference is due the jury's determination.  *Brown*, 567 F.3d at 205.  The focus is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit.  *Herrera*, 506 U.S. at 402.  Here, Pawlak has not demonstrated that the jury's decision to convict him of the crimes based on the direct and circumstantial evidence was not rational.

Furthermore, as discussed above, on federal habeas review, two layers of deference apply.  Accordingly, even if this Court were to conclude that a rational trier of fact could not

have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (citing 28 U.S.C. § 2254(d)(2)) (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Pawlak contends that the state court's decision "is objectively unreasonable because the conflicting testimony precluded a guilty verdict." Doc. 17, p. 11. In reviewing Pawlak's sufficiency of the evidence claim, the court of appeals applied the proper standard, i.e., "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Doc. 7-1, p. 12, ¶ 13; *see also Jackson*, 443 U.S. at 319. Applying the appropriate standard and thoroughly considering both the direct and circumstantial evidence, the state court of appeals concluded that "After reviewing the record, we find that the state presented sufficient evidence, if believed, to demonstrate that appellant drove away from Sweetbriar in the stolen truck, evaded the police officers that were pursuing him, and crashed the truck into the Dover Gardens Tavern." Doc. 7-1, p. 105, ¶ 22. While Pawlak argues that there was conflicting testimony, he has not shown that the state court of appeals unreasonably concluded that there was sufficient evidence to support his convictions. Nor has he shown that the state court of appeals' sufficiency determination was contrary to or an unreasonable application of clearly established federal law, as required under AEDPA.

Based on the foregoing, the undersigned concludes that federal habeas relief is not warranted based on Pawlak's sufficiency of the evidence claim and, therefore recommends that the Court DENY Pawlak's sufficiency of the evidence claim in Ground One.

### 2.    Ground Two should be DISMISSED and/or DENIED

In Ground Two, Pawlak argues that trial counsel failed to provide effective assistance of counsel.  Doc. 1, p. 7; Doc. 17, pp. 12-15.  Pawlak argues that his trial counsel was constitutionally ineffective because he failed to file a motion to suppress Pawlak's video-taped police interview.  *Id.*  Pawlak raises three additional grounds of ineffective assistance of counsel – he also argues that trial counsel was ineffective because he failed to compel DNA testing; that trial counsel was ineffective because he spent a large amount of time on cross-examination trying to blame the State for causing the crash by engaging in a high-speed chase and deploying stop sticks, which Pawlak claims could only have inflamed the jury against Pawlak; and that his appellate counsel was ineffective for failing to assert as an assignment of error trial counsel's failure to obtain DNA testing of blood samples taken from the crash scene  *Id.*

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. Amend. VI.

In *Strickland v. Washington*, the Supreme Court set forth two requirements that must be shown in order to establish that an attorney was constitutionally ineffective.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

First, a petitioner must demonstrate "that counsel's performance was deficient."  "This requires showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*   A petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id*. at 688.   "Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court,

17

examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* 689.  Thus, in order to conduct a fair assessment of counsel's performance, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*   In light of "the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

"Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687.  "This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*   "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The only ineffective assistance of counsel claim Pawlak alleged in state court was that trial counsel was ineffective for not filing a motion to suppress his interview.  Doc. 7-1, pp. 57-59.  Pawlak contends he raised ineffective assistance of counsel in his direct appeals and therefore he fairly presented all the claims he now seeks to present.  Doc. 17, p. 14.  However, other than alleged ineffective assistance of counsel based on a failure to file a motion to suppress, the other claims, i.e., ineffective assistance of trial counsel based on failure to compel DNA testing; ineffective assistance of trial counsel because he spent a large amount of time on cross-examination trying to blame the State for causing the crash by engaging in a high-speed

chase and deploying stop sticks, and ineffective assistance of appellate counsel for failing to assert as an assignment of error trial counsel's failure to obtain DNA testing of blood samples taken from the crash scene, were not presented in state court.  Doc. 1, p. 7; Doc. 17, pp. 12-15. And, in order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *McMeans*, 228 F.3d at 681. This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin*, 811 F.2d at 324-325; *Prather*, 822 F.2d at 1421.  The two additional alleged instances of ineffective assistance of trial counsel could have been but were not raised in Pawlak's direct appeal.  Moreover, the claim of ineffective assistance of appellate counsel was not raised in an Ohio App. R. 26(B) application. Also, the alleged ineffective assistance of appellate counsel was not raised in the Petition filed in this Court; it was only first raised in the Traverse.  *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (an argument first presented in a petitioner's traverse rather than in his petition was not properly before the district and it was not error for the district court to decline to address the argument).

Accordingly, with respect to the three claims of ineffective assistance of counsel not fairly presented to the state courts, the undersigned recommends that the Court DISMISS those claims because they are unexhausted and/or procedurally defaulted because there is no avenue for Pawlak to now seek to present those claims in state court and Pawlak has failed to demonstrate a basis upon which his procedural default of these claims should be excused.   Any attempt to excuse his procedural default due to ineffective assistance of appellate counsel is futile.  As discussed more fully below in connection with Ground Four, claims of ineffective assistance of counsel cannot provide cause for the procedural default of another claim if the

ineffective assistance claim itself is procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  Here, Pawlak procedurally defaulted his ineffective assistance of appellate counsel claim because he did not seek to raise that claim in state court.  Moreover, he has not argued or demonstrated cause and prejudice to overcome that procedural default.  Also, as discussed more fully below in connection with Ground Four, Pawlak has not demonstrated a fundamental miscarriage of justice sufficient to overcome the procedural default of claims he now seeks to raise.

With respect to Pawlak's claim that his trial counsel was ineffective for failing to file a motion to suppress his videotaped interview, that claim was presented to the state courts and the state appellate court found it to be without merit.  In reaching its determination, the state court of appeals identified the proper federal constitutional standard for reviewing alleged ineffective assistance of counsel claims, stating:

> {¶ 39} In his second assignment of error, appellant argues that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution. Specifically, appellant contends that trial counsel's failure to file a motion to suppress evidence obtained during Detective Reikowski's interview of appellant constituted ineffective assistance.
>
> {¶ 40} To establish ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance fell below an objective standard of reasonable representation and (2) that he was prejudiced by that performance. *Strickland v. Washington,* 466 U.S. 668, 687–688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.
>
> {¶ 41} The failure to prove either prong of the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal,* 87 Ohio St.3d 378, 388–389, 721 N.E.2d 52 (2000), citing *Strickland* at 697. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground

of lack of sufficient prejudice * * * that course should be followed." *Strickland* at *id.*

{¶ 42} In the instant matter, we need not address the first *Strickland* prong because appellant cannot show prejudice, or a reasonable probability that but for trial counsel's failure to file a motion to suppress the evidence, the proceeding's result would have been different.

{¶ 43} Detective Reikowski testified that he interviewed appellant on the day after the incident at Dover Gardens Tavern. Detective Reikowski explained:

> we sat him down, we read him *Miranda,* and explained very clearly we wanted him to read the *Miranda,* understand it. He pretty quickly decided he didn't want to, but he was trying to pull information from us. So it's pretty common procedure to just kind of let him talk. So he was talking about it, and *he made reference to the fact he knows he's the driver* and there's nothing he can do to change that.

> And then we jumped into the fictional red shirt, and I told him, "[w]e could talk about that, but again I need *Miranda* to cover myself and you so you understand what we're doing." (Tr. 773.)

(Emphasis added.)

{¶ 44} Appellant contends that his statement to Detective Reikowski "is tantamount to a confession" and that because his attorney did not move to suppress his statement, the state "was ultimately permitted to use this [statement] as a confession." Furthermore, appellant argues that had the "confession" not been admitted at trial, it is unlikely that he would have been convicted.

{¶ 45} After reviewing the record, we find that appellant's ineffective assistance claim fails under the second *Strickland* prong. Detective Reikowski clarified that appellant made no admission as to being the driver of the truck that crashed into the bar: "[t]he statements when he said, 'I know I'm the driver,' were followed up by references to the red-shirted guy." (Tr. 774.) Even if appellant's trial counsel had moved to suppress his statements to Detective Reikowski, the state presented ample evidence that appellant drove the truck that crashed into Dover Gardens Tavern. Furthermore, appellant's statement was voluntary and made after he had been *Mirandized.* Accordingly, appellant cannot demonstrate that he was prejudiced by counsel's alleged deficient performance.

{¶ 46} Based on the foregoing analysis, appellant's second assignment of error is overruled.

*Pawlak*, 2016-Ohio-5926, ¶¶ 39-46, 206 WL 5371773, * 7-9; Doc. 7-1, pp. 112-114.

Pawlak acknowledges that the state court of appeals ruled against him on the ineffective assistance of trial counsel claim, but he argues that "this Court may find that Petitioner's trial counsel failed to render effective assistance based upon the evidence, and that Petitioner suffered prejudice as a result."  Doc. 17, p. 13.  He argues further that, "[i]n this matter, there can be little doubt that the performance of Petitioner's counsel throughout the entire state court proceedings was objectively deficient, to the point where Petitioner did not receive a fair trial."  *Id.*  However, where, as in this case, a state court of appeals has reached the merits of the ineffective-assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d).  *Perkins v. McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011).  There is no de novo review of the evidence.  In *Harrington*, the Supreme Court emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Perkins*, 411 Fed. Appx. at 828 (quoting *Harrington,* 131 S.Ct. 770, 786-788).  Pawlak seeks to have this Court consider the evidence de novo and find ineffective assistance of counsel. However, he does not explain or show how the Eighth District Court of Appeals' determination that Pawlak could not satisfy the second prong of *Strickland* "was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Id.*  As the state court of appeals explained,

> {¶ 45} After reviewing the record, we find that appellant's ineffective assistance claim fails under the second *Strickland* prong. Detective Reikowski clarified that appellant made no admission as to being the driver of the truck that crashed into the bar: "[t]he statements when he said, 'I know I'm the driver,' were followed up by references to the red-shirted guy." (Tr. 774.) Even if appellant's trial counsel had moved to suppress his statements to Detective Reikowski, the state presented ample evidence that appellant drove the truck that crashed into Dover Gardens Tavern. Furthermore, appellant's statement was voluntary and made after he had been *Mirandized.* Accordingly, appellant cannot demonstrate that he was prejudiced by counsel's alleged deficient performance.

*Pawlak*, 2016-Ohio-5926, ¶ 45, 206 WL 5371773, * 8; Doc. 7-1, p. 114.  He has failed to

demonstrate that this determination is contrary to or an unreasonable application of clearly

established federal law.

Accordingly, for the reasons discussed herein and considering the deference afforded the

state court's *Strickland* determination, the undersigned recommends that the Court DENY the

portion of Ground Two that was fairly presented to the state court, i.e., the claim that trial

counsel was ineffective for failing to file a motion to suppress.  Also, with respect to the three

claims of ineffective assistance of counsel not fairly presented to the state courts, the

undersigned recommends that the Court DISMISS those claims because they are unexhausted

and/or procedurally defaulted.

### 3.    Ground Three should be DISMISSED

In Ground Three, Pawlak argues that the trial court abused its discretion in sentencing

him to 35.5 years, which included consecutive sentences, and violated his constitutional rights.

Doc. 1, p. 8; Doc. 17, pp. 15-16.  Respondent argues that the sentencing claim in Ground Three

is not cognizable on federal habeas review.  Doc. 7, pp. 27-34.  In response, in his Traverse,

Pawlak argues that his sentencing claim as to the consecutive sentences is "more properly

viewed from the perspective of ineffective assistance of counsel[,]" stating that "[i]neffective assistance of counsel is certainly a violation of a constitutional right as set forth in *Strickland* and its progeny." Doc. 17, p. 15. And, he argues further that, "[t]he ineffective assistance rendered by Petitioner's trial counsel makes his sentencing claim one of constitutional magnitude because that inadequate assistance led directly to Petitioner's 35.5 year sentence." *Id.* Also, Pawlak argues that the decision to impose consecutive sentences violated O.R.C. § 2941.25(A). Doc. 17, p. 16.

The state appellate court considered Pawlak's sentencing claim but found it to be without merit. The court concluded that the trial court did not err by imposing consecutive sentences and the sentences imposed were not contrary to law because the sentences imposed were within the permissible statutory ranges and the trial court considered the required factors. Doc. 7-1, p. 123, ¶ 65.

Pawlak's attempt to reframe his sentencing claim as an ineffective assistance of counsel claim in his Traverse is futile because a Court need not consider new claims or arguments first raised in a Traverse. *See Tyler*, *supra.* Pawlak did not present his sentencing claim in the state courts as an ineffective assistance of counsel claim nor did he present Ground Three in that manner in his Petition. Additionally, as discussed above with respect to Ground Two, Pawlak has not demonstrated that the state court of appeals' application of *Strickland* to his ineffective assistance of trial counsel claim premised on a failure to file a motion to suppress was contrary to or an unreasonable application of clearly established law and/or he failed to exhaust and/or procedurally defaulted his alternative claims of ineffective assistance of counsel.

Furthermore, Pawlak's claim that the imposition of consecutive sentences violated Ohio law is not for this Court's review. *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604,

163 L. Ed. 2d 407 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986) ("A federal court must accept a state court's interpretation of that state's statutes and rules of practice.").

"[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) (internal citations omitted); *See also*, *Garrett v. Miller*, 2012 WL 3989022, *3-4 (N.D. Ohio Aug. 13, 2012), *report and recommendation adopted*, 2012 WL 3989004 (N.D. Ohio Sept. 11, 2012) ("A challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action.") (citing *Howard v. White,* 2003 WL 22146139, at *2 (6th Cir. Sept.16, 2003)*; Kipen v. Renico,* 2003 WL 21130033 (6th Cir. May 14, 2003)*; Terry v. Trippett,* 62 F.3d 1418, 1995 WL 469424, at *1 (6th Cir.1995) (TABLE, text in WESTLAW) (citing *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988) (per curiam))

Also, Pawlak has not demonstrated that his sentencing claim implicates federal constitutional concerns.  The Supreme Court, in *Oregon v. Ice*, 555 U.S. 160 (2009), when considering the scope of the 6th Amendment's jury trial guarantee as interpreted by *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), concluded that a trial court's imposition of consecutive sentences does not implicate federal constitutional concerns.  *See Oregon v. Ice*, 555 U.S. 160, 171 (2009); *see also Wilkins v. Warden, Chillicothe Correctional Inst.*, 2010 WL 5795505, * 19 (S.D. Ohio Sept. 2, 2010), *report and recommendation adopted*, 2011 WL 549916, * 3 (S.D. Ohio Feb. 8, 2011) (indicating that "the Supreme Court has made it clear that consecutive sentences may be imposed without implicating any concerns under the Sixth Amendment.") (citing *Ice*, 555 U.S. 160); *see also Sneed v.*

*Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (concluding that a petitioner's challenge to the aggregation of several sentences involved a matter of state law and was not cognizable in the federal habeas proceeding).  Also, when a sentence is within the range prescribed by law, there is no federal constitutional issue presented.  *White v. Keane*, 969 F.2d 1381, 1383 (2nd Cir. 1992) (rejecting petitioner's claim that the sentence imposed upon him resulted in cruel and unusual punishment).

Considering the foregoing, the undersigned recommends that the Court DISMISS Ground Three as not cognizable on federal habeas review.

### 4.    Ground Four should be DISMISSED and/or DENIED

In Ground Four, Pawlak presents a *Brady v. Maryland*, 373 U.S. 83 (1963) claim, arguing that the State withheld exculpatory evidence when it collected forensic evidence from the scene but failed to test the evidence.  Doc. 1., p. 10; Doc. 17, pp. 16-18.   He contends that the evidence "is without question, either exculpatory, or inculpatory[,]" arguing that, "if the DNA and blood match Petitioner's, then it can only be that he was the driver.  However, if the DNA obtained is not Petitioner's, he could not have been the driver of the vehicle."  Doc. 17, p. 17.  Respondent argues that Ground Four should be dismissed as procedurally defaulted because Pawlak did not fairly present the claim in state court.  Doc. 7, pp. 4-38.

Pawlak asserts that he raised the issue of the absence of DNA evidence at trial and mentioned the issue in his memorandum in support of jurisdiction filed with the Supreme Court of Ohio.  Doc. 17, p. 17.  He states, however, that his trial counsel "failed to compel the DNA testing that would have resolved the issue definitively.  Moreover, Petitioner's appellate counsel failed to raise the matter before the 8th District Court of Appeals."  Doc. 17, pp. 17-18.

Petitioner's own account of where he did and did not raise the issue pertaining to the DNA evidence demonstrates that he did not fairly present the claim at each and every level of the state court proceedings.  As explained above, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"  *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also  Baston*, 282 F.Supp.2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also Moreland*, 50 Ohio St.3d at 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver).  Pawlak acknowledges that he was aware of the absence of DNA evidence at trial yet his DNA/*Brady* claim was not raised in his direct appeal.  To the extent that Pawlak seeks to excuse the procedural default of his DNA/*Brady* claim based on ineffective assistance of appellate counsel for failing to raise the issue before the appellate court and/or for failing to raise ineffective assistance of trial counsel based on a failure to obtain testing of the evidence, he cannot do so.  "Attorney error that constitutes ineffective assistance of counsel is cause" to overcome procedural default.  *Coleman v. Thompson*, 501 U.S. 722, 754 (1991).  However, claims of ineffective assistance of counsel cannot provide cause for the procedural default of another claim if the ineffective assistance claim itself is procedurally defaulted. *Edwards*, 529 U.S. at 453.  Although "that procedural default may [] *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim."  *Id*. (emphasis original).  Here, Pawlak procedurally defaulted any claim of ineffective assistance of appellate counsel because he did not seek to raise that claim in state court through the filing of an Ohio App. R. 26(B) application.  Moreover, he has not argued or demonstrated cause and prejudice to overcome that procedural default.

Pawlak argues that "DNA analysis will *likely* prevent a miscarriage of justice."  Doc. 17, p. 18 (emphasis supplied).  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  As indicated above, Pawlak contends that, "if the DNA and blood match Petitioner's, then it can only be that he was the driver.  However, if the DNA obtained is not Petitioner's, he could not have been the driver of the vehicle."  Doc. 17, p. 17.  Pawlak's claim that DNA testing will definitively answer whether he was the driver is incorrect.  Even if the samples are tested and there is no match between those samples and Pawlak's DNA or blood, that result would not prove that Pawlak is actually innocent.

Furthermore, even if Ground Four is not procedurally defaulted, the undersigned recommends that the Court DENY Ground Four because Pawlak has not demonstrated a *Brady* violation.  "To establish a violation of *Brady,* the petitioner has the burden of establishing that the prosecutor suppressed evidence; that such evidence was favorable to the defense; and that the suppressed evidence was material."  *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).  Here, Pawlak complains that that State did not test DNA evidence that was collected.  He does not contend that the prosecutor did not disclose that the DNA evidence had been collected or that he was not aware of the existence of the evidence at the time of trial.  "[T]he Supreme Court has explained that 'the police do not have a constitutional duty to perform any particular tests.'"  *Armijo v. Tapia*, 288 F. Appx. 530, 533 (10th Cir. 2008) (quoting *Arizona v. Youngblood,* 488 U.S. 51, 59, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)).  And "the *Brady* line of cases does not stand for the proposition that the prosecution must perform any forensic tests that may inure to the benefit of the accused." *Armij*, 288 F. Appx. at 534 (citing *See United States v. Marrero,* 904 F.2d 251, 261 (5th Cir.1990)).

For the reasons explained herein, the undersigned finds that Pawlak procedurally defaulted Ground Four and has not demonstrated a basis upon which to excuse that procedural default.  Alternatively, even if not procedurally defaulted, the undersigned finds that Pawlak cannot demonstrate a *Brady* violation.  Accordingly, the undersigned recommends that the Court DISMISS and/or DENY Ground Four.

## IV.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court DISMISS and/or DENY Pawlak's Petition.


Dated: April 14, 2020                                    */s/ Kathleen B. Burke*
                                                              Kathleen B. Burke
                                                              United States Magistrate Judge



## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).